**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-00608-CMA-GPG

SANDEEP SACHDEVA,

    Plaintiff,

v.

RICHARD CARDONE,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S 12(b)(1) MOTION TO DISMISS (DOC. # 24)**

---

Currently before the Court is Defendant Richard Cardone's Rule 12(b)(1) Motion to Dismiss and to Compel Arbitration, which was filed on May 23, 2016. (Doc. # 24.) On June 9, 2016, Plaintiff Sandeep Sachdeva filed his opposition to Defendant's motion (Doc. # 41), to which Defendant replied on June 23, 2016 (Doc. # 43). For the reasons that follow, the Court grants Defendant's motion.

## I. BACKGROUND

This matter involves a business dispute between two individuals. Plaintiff alleges that, in March 2013, he entered into a limited partnership agreement with Defendant, and Roaring Fork Advisors L.L.C. ("RFA LLC")[1] to create Roaring Fork Advisors L.P. ("RFA LP" or "the Partnership"). (Doc. # 1 at 2 ¶ 5.) RFA LLC was designated as the

---

[1] Plaintiff and Defendant are the only members of RFA LLC, and Plaintiff is RFA LLC's manager. (Doc. # 24-1 at 11 ¶ 39.) Plaintiff formed RFA LLC on February 26, 2013. (Doc. # 24-1 at 11 ¶ 39.)

general partner, and Plaintiff and Defendant were limited partners. (Doc. # 1 at 2 ¶ 5.) Plaintiff alleges that he "sought to make the Partnership a profitable business venture, despite [Defendant's] failure to assist him." (Doc. # 1 at 3 ¶ 6.) Ultimately, Plaintiff's efforts were "unsuccessful." (Doc. # 1 at 3 ¶ 6.)

Plaintiff alleges that in his efforts to make the Partnership profitable, he personally paid the "normal operating expenses" of the Partnership. (Doc. # 1 at 3 ¶ 7.) As a result, the Partnership owed $4,358,941.00 to Plaintiff. (Doc. # 1 at 3 ¶ 7.) Prior to the failure of the Partnership, Defendant executed a guaranty "personally guarantee[ing] all amounts due and owing under the terms of the Partnership Agreement for his partnership share (14.5%) if [the Partnership] defaulted on any of its obligations." (Doc. # 1 at 2 ¶ 6.)

On January 11, 2016, the Partnership and Plaintiff sued Defendant in Colorado district court. (Doc. # 24-1.) Among the 17 causes of action, the eleventh claim alleges that Defendant breached the guaranty when he "failed and refused to perform the obligations required of him by the Guarantee (sic)." (Doc. # 24-1 at 32-33 ¶¶ 228-235.) The state court litigation is currently pending.

On March 7, 2016, Plaintiff wrote a letter to the Partnership "demand[ing] satisfaction of the Partnership's legal obligations towards him within seven days." (Doc. # 1 at 3-4 ¶ 8.) The Partnership responded on March 15, 2016, in a letter signed by Plaintiff as its Managing Partner, stating that it was unable to pay the alleged debt. (Doc. # 1-4.) However, in lieu of payment, the Partnership offered to assign its rights under Defendant's guaranty to Plaintiff. (Doc. # 1 at 4 ¶ 10.) Plaintiff accepted and,

that same day, Plaintiff and the Partnership executed an assignment of the Guaranty. (Doc. # 1 at 4 ¶ 11.) Also that same day, Plaintiff filed this instant lawsuit, which asserts a single claim based on Defendant's alleged breach of the guaranty. (Doc. # 1.) Plaintiff asserts that this Court has subject-matter jurisdiction over the dispute under 28 U.S.C. § 1332. (Doc. # 1 at 2 ¶ 3.)

In his motion to dismiss, Defendant challenges Plaintiff's assertion of subject-matter jurisdiction, arguing that Plaintiff "improperly manufactures diversity of citizenship where none exists" by assigning RFA LP's claims to himself and additionally that Plaintiff "cannot satisfy the amount in controversy requirement." (Doc. # 24 at 1, 3.) Defendant also argues that the limited partnership agreement contains an arbitration provision that governs Plaintiff's claim under the guaranty. Plaintiff responds that he did not manufacture diversity of citizenship and has a legitimate business reason for the assignment in that he sought to "streamline the process of recovery by removing RFA LP, a non-operational, judgment-proof entity." (Doc. # 41.)

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claims. Instead, it is a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject-

matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges generally take two forms: " [t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, Defendant makes a factual attack on subject matter jurisdiction. When reviewing a factual attack on subject matter jurisdiction, a district court does not presume the truthfulness of the complaint's factual allegations. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). A court has wide discretion to consider affidavits, other documents, and to conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*[2]

### III. ANALYSIS

Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994). This Court has diversity jurisdiction to hear cases where the parties are citizens of different states and the amount in controversy exceeds $75,000,

---

[2] In his response, Plaintiff requests a limited evidentiary hearing on the issue of subject matter jurisdiction. Defendant opposes Plaintiff's request for a hearing. Plaintiff fails to indicate why a hearing is necessary and this Court finds that a hearing is not necessary.

exclusive of interest and costs.  28 U.S.C. § 1332.  If this Court lacks subject matter jurisdiction over this case, the Court must dismiss the case. Fed.R.Civ.P. 12(h)(3).  "This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where jurisdiction does not affirmatively appear in the record."  *Reinhart Oil & Gas, Inc. v. Excel Directional Techs., LLC*, 463 F. Supp.2d 1240, 1243 (D. Colo. 2006) (citations omitted).

It is undisputed that this Court would lack jurisdiction over a case by RFA LP against Defendant because complete diversity would be lacking.  Defendant, who is a resident of New York, is a limited partner of RFA LP.  (Doc. # 1 at 2.)  For diversity purposes, a partnership is a citizen of all states of which any of its partners are citizens.  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990).  Thus, the citizenship of RFA LP would be both Colorado and New York and complete diversity would be lacking in a suit by RFA LP against Defendant, also a citizen of New York.  On March 15, 2016, however, RFA LP assigned its claims under the guaranty to Plaintiff, and, thus, there is complete diversity in this case because it is between residents of Colorado and New York.

Defendant contends, however, that Plaintiff engaged in an improper and collusive assignment of RFA LP's claims to invoke the jurisdiction of this Court and thus this Court should dismiss this case.  Federal law provides that:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359.  Section 1359 is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary contract and tort litigation into the federal courts.  *Kramer v. Caribbean Mills Inc.*, 394 U.S. 823, 828-29 (1969).

In determining whether an assignment was improperly or collusively made, the Court starts with the presumption against diversity jurisdiction.  *Reinhart Oil & Gas*, 463 F. Supp.2d at 1244-5 (citing *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895).  Furthermore, the legality of an assignment is not determinative of whether it violates § 1359. *Id*. at 1245 (citing *Kramer*, 394 U.S. at 829).  Rather, all "[t]ransfers or assignments that have the effect of creating federal jurisdiction raise a red flag and, thus, need to be examined with care." *Id*. (*quoting McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004).

The Tenth Circuit has explained that an analysis of § 1359 turns on "the totality of the circumstances, " and has outlined seven factors to consider in determining whether an assignment was improperly made to manufacture diversity: (1) "Did the assignee lack a prior connection with the matter?"; (2) "Did the assignor select the assignee's attorney and pay the assignee's litigation expenses?"; (3) "Did the assignor retain control of the litigation?"; (4) "Did the assignee agree to pay the assignor a portion of any recovery?"; (5) "Did the assignee provide meaningful consideration for the assignment?"; (6) "Is the assignment's timing suspicious?"; and (7) "Was the assignment motivated by a desire to create diversity jurisdiction?" *Nat'l Fitness*

*Holdings, Inc. v. Grand View Corporate Centre, LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014).

When analyzing these factors, some courts have applied a presumption of collusion where there is a close relationship with the assignor and the assignee (such as exists in this case) and held that the Court should analyze the above factors with elevated scrutiny. *See e.g., Yokeno v. Mafnas*, 973 F.2d 803, 809-10 (9th Cir. 1992) ("assignments by corporations to their officers or directors are presumptively ineffective to create diversity jurisdiction") (internal quotation omitted); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2nd Cir. 1976) ("the creation of a presumption represents an appropriate method of resolving claims of collusiveness based upon assignments between related corporations"). While the Tenth Circuit has not reached this issue, some district courts in this Circuit have applied such a presumption. *See e.g.*, *Reinhart Oil & Gas, Inc. v. Excel Directional Techs., LLC*, 463 F. Supp.2d 1240, 1243 (D. Colo. 2006); *Canton Indus. Corp. v. Mi–Jack Prods., Inc.*, 944 F. Supp. 853, 856 (D. Utah 1996). This Court believes that such a presumption is appropriate in this case where the Plaintiff, as Managing Member of RFA LP, sent a letter to himself acknowledging the debt owed by the Partnership to himself, and offering to assign the Partnership's rights under the guaranty to Plaintiff. (Doc. 1-4.)

In evaluating the factors set out by the Tenth Circuit, this Court finds that the first factor weighs in favor of Plaintiff. Plaintiff had a prior connection with this matter as he had a preexisting financial interest in the dispute. With respect to the second and third factors, the parties did not discuss whether the Partnership or Plaintiff selected the

attorney.[3] Plaintiff alleges, and Defendant does not dispute, that the Partnership does not pay for the litigation expenses. However, this Court notes that the same attorney represents both Plaintiff and the Partnership in the underlying litigation and it is undisputed that the Partnership lacks the funds to finance either this litigation or the state court litigation. Accordingly, this Court finds that these factors neither weigh in favor nor against a finding that the assignment was made to manufacture diversity jurisdiction.

With respect to the fourth factor, there is no evidence that Plaintiff has agreed to pay assignor a portion of any recovery and thus this factor weighs in favor of a finding against collusion.

With respect to the fifth factor and whether Plaintiff provided meaningful consideration for the assignment, the Court questions the meaningfulness of the consideration that was provided by the assignment. Plaintiff contends that he was owed over $4,000,000 by the Partnership and that he agreed to forgive this debt in exchange for the Partnership assigning Defendant's guaranty to Plaintiff. Releasing his claim of $4,358,941 against the Partnership is something of value. However, given Plaintiff's concession that Partnership was "defunct" and "non-operational" (Doc. # 41 at pp. 2, 9), it does not appear that the agreement to forgive the Partnership's debt has much value. In *Nat'l Fitness Holdings, Inc,*, the Tenth Circuit questioned whether the assignment by

---

[3] Both parties failed to cite the Tenth Circuit case *Nat'l Fitness Holdings, Inc. v. Grand View Corporate Centre, LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014). Instead, both parties relied on a District of Colorado case, *Reinhart Oil & Gas, Inc. v. Excel Directional Techs., LLC*, 463 F. Supp.2d 1240, 1243 (D. Colo. 2006), which was decided before *Nat'l Fitness* and identifies slightly different factors.

a company of all of its stock to its sole director, officer, and shareholder constituted meaningful consideration. 749 F.3d at 1207. Likewise, this Court finds that while the forgiveness of Plaintiff's debt undoubtedly did constitute some consideration, this Court questions whether the consideration was "meaningful." Accordingly, this Court finds that this factor neither supports nor weighs against a finding of collusion with respect to the assignment.

The final two factors favor the Defendant. With respect to the sixth factor, the timing of the assignment is undoubtedly suspicious. The Partnership assigned the guaranty over to Plaintiff on March 15, 2016, the same day the present lawsuit was filed. The assignment also occurred three months after both the Partnership and Plaintiff sued Defendant under the guaranty in state court, and the day after Defendant moved for arbitration and for sanctions in the state court action. (Doc. ## 24-1, 24-2.) Thus, the timing of the assignment, after the Partnership had already sued to enforce the guaranty, and the same day as Plaintiff filed this lawsuit, supports a finding that the assignment was done for the purposes of manufacturing jurisdiction in this Court. *Nat'l Fitness Holdings, Inc. v. Grand View Corporate Centre, LLC*, 749 F.3d 1202, 1205 (10th Cir. 2014) (finding plaintiff's actions in incorporating new company three months after receiving court's adverse diversity-jurisdiction ruling and shortly thereafter assigning it the claim supported district court's finding of manufactured diversity); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d at 992 (9th Cir. 1994) (finding the timing of the assignment, only three days before filing of the action in federal court suggested collusion); *Airlines Reporting Corp. v. S & N Travel*, 58 F.3d 857, 863–64 (2d

Cir. 1995) (finding the timing of assignment cast doubt on the asserted business reasons for the assignment).

With respect to the seventh factor, Plaintiff finds that the assignment was motivated to create diversity jurisdiction. Plaintiff contends that the reason for the transfer was to "streamline the process of recovery by removing RFA LP, a nonoperational, judgment-proof entity." (Doc. # 41 at 2.) This Court does not find this claim to be credible. First, Plaintiff does not explain how the process of recovery is streamlined. Indeed, prior to making the assignment, both Plaintiff and RFA LP had already sued in state court to enforce the guaranty. (Doc. # 24-1). Thus, it appears that at that time, Plaintiff did not believe that an assignment was necessary to enforce the guaranty. Second, the timing of the assignment demonstrates that the real reason for the assignment was so that this suit could be instituted -- not to streamline the process. Otherwise, Plaintiff would have done the assignment prior to litigating the claim in state court. Finally, Plaintiff comes awfully close to admitting that the reason he filed this action was to get a second bite at the apple on his claim. In his brief, he admits that he is "awaiting the [state court's] decision" to "understand what is left in [that] case and what is being sent to arbitration" and that at that time he "may well decide to withdraw the claim for breach of [g]uaranty" in this case. (Doc. # 41 at pp. 8-9.)[4]  Thus, Plaintiff admits that the only reason he filed this action (or at least continues to prosecute this

---

[4] In a footnote, Defendant contends that Plaintiff violated the rule against claim-splitting but does not argue that this is a basis for dismissal. Because Plaintiff filed the same claim in state court, this Court questions whether, even if it found that Plaintiff's assignment was not collusive, it would abstain from exercising jurisdiction under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). However, since the parties have not briefed this issue, the Court forgoes analysis of this issue.

10

action) is to get a different decision from that of the state court, should that court rule against him.

Given the totality of the circumstances, and considering the factors outlined by the Tenth Circuit, this Court finds that the assignment of the guaranty from the Partnership to Plaintiff was done for the purpose of manufacturing jurisdiction in this Court. This Court finds that, in this case, the sixth and seventh factors are far more significant than the first and fourth factors. The fact that the Partnership made the assignment of the guaranty the same day as Plaintiff initiated this lawsuit and three months after Plaintiff and the Partnership had already filed a state court lawsuit litigating the same claim, that Plaintiff has been unable to articulate a significant business reason for the assignment, and that Plaintiff has essentially admitted that this litigation is only necessary if he loses in state court substantially outweigh the fact that Plaintiff previously had an interest in this litigation and has not agreed to pay the Partnership any portion of any recovery he might obtain.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendant's Motion to Dismiss (Doc. # 24) is GRANTED. It is

FURTHER ORDERED that the Complaint is DISMISSED WITH PREJUDICE.

DATED: January 6, 2017　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　_Christine M Arguello_
　　　　　　　　　　　　　　　　　　　　　CHRISTINE M. ARGUELLO
　　　　　　　　　　　　　　　　　　　　　United States District Judge